1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    JAMES STEEVES,                              No. CIV S-08-0840-CMK

12                   Plaintiff,

13            vs.                                  <u>MEMORANDUM OPINION AND ORDER</u>

14    COMMISSIONER OF SOCIAL
      SECURITY,

15
                     Defendant.
16
      _____/
17

18            Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19    review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20    Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

21    judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

22    before the court are plaintiff's motion for summary judgment (Doc. 13) and defendant's cross-

23    motion for summary judgment (Doc. 14).

24    / / /

25    / / /

26    / / /

                                          1

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on July 1, 2005.  In the application, plaintiff claims that disability began on September 6, 2003.  In his motion for summary judgment, plaintiff claims that disability is caused by a combination of chronic obstructive pulmonary disease ("COPD"), lack of one kidney, high blood pressure, and scoliosis.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on October 30, 2006, before Administrative Law Judge ("ALJ") Daniel G. Heely.   In a December 21, 2006, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

<blockquote>

1.    Plaintiff has the following severe impairments: COPD and scoliosis;

2.    Neither impairment meets or medically equals an impairment listed in the Listing of Impairments;

3.    The plaintiff has the residual functional capacity to perform sedentary work with no exposure to smoke or other environmental irritants;

4.    Plaintiff cannot perform his past relevant work;

5.    Plaintiff's subjective statements regarding pain and other symptoms are not credible; and

6.    Based on application of the Grids, there are jobs which exist in significant numbers which plaintiff can perform.

</blockquote>

After the Appeals Council declined review on February 15, 2008, this appeal followed.


# II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following evidence, summarized chronologically below:

<u>August 18, 2003</u> – Richard Buys, M.D., reported following plaintiff's admission to the emergency room at San Joaquin General Hospital.  (CAR 188).  The doctor stated that plaintiff came in complaining of shortness of breath.  He was provided medication and released.

/ / /

1         September 6, 2003 – Adriana Arreola, D.O., reported following plaintiff's

2    admission to the emergency room at San Joaquin General Hospital.  (CAR 203-06).  He

3    presented complaining of shortness of breath once a week.  The doctor reported that plaintiff was

4    smoking up to 1-1/2 packs of cigarettes per day.  She also noted that plaintiff had a history of

5    alcohol abuse, drinking 1/2 pint of vodka per day.  Plaintiff was provided medication and

6    released.

7         November 27 2004 – Karen Philippi, M.D., reported following plaintiff's

8    admission to the emergency room at San Joaquin General Hospital.  (CAR 182-83).  Dr. Philippi

9    noted that plaintiff had arrived by ambulance complaining of shortness of breath.  Plaintiff was

10   provided medication and was later able to walk around the emergency room without shortness of

11   breath.

12        March 1, 2005 – Kanwar Grewal, M.D., submitted a "Physician's Supplemental

13   Certificate" to EDD.  (CAR 67).  In this statement, Dr. Grewal indicated that plaintiff was

14   disabled due to COPD and that he continues to use a nebulizer.  The doctor also stated that

15   plaintiff would be able to return to his regular work on May 11, 2005.

16        June 22, 2005 – Madhuri Pellakuru, M.D., reported following plaintiff's

17   admission to the emergency room at San Joaquin General Hospital.  (CAR 104, 108-09, 111).

18   Plaintiff was brought in by ambulance with complaints of worsening shortness of breath for one

19   day.  He also complained of chest pain while walking.  On physical examination, the doctor

20   noted that breath sounds were heard and that there was a wheeze bilaterally with minimal basilar

21   crackles.  The doctor also noted that plaintiff's urine toxicology was positive for cocaine and that

22   plaintiff admitted that he smokes marijuana.  Dr. Pellakuru provided the following assessment:

23           Chronic obstructive pulmonary disease exacerbation, secondary to
        bronchitis.  Chest x-ray is within normal limits.  No infiltrates.  White

24           blood cell count is normal.  The patient is currently on Albuterol and
        Azmacort. . . . [¶] Polysubstance abuse, alcohol, marijuana, we will get a

25           substance abuse consult. [¶] Smoking counseling done.  The patient does
        not want to quit at this time.

26

1    Plaintiff was given medication and discharged.

2              September 19, 2005 – Agency examining doctor Satish Sharma, M.D., reported

3    on a comprehensive internal medical evaluation.  (CAR 71-75).  Dr. Sharma reported the

4    following history:

5              The claimant is a 39-year-old Caucasian male who complains of cough
             and shortness of breath.  He gives a history of cough with whitish-
6             yellowish sputum.  No history of hemoptysis.  He is a smoker and used to
             smoke 2-1/2 packs a day but is now down to one pack per day.  He has
7             been smoking for the past twenty-five years.  He has had several
             hospitalizations in the past five to six years for the exacerbation of
8             shortness of breath, on average about two to three times per year.  The last
             time was in June of this year.  He also has had several Emergency Room
9             visits, on average about four or five per year.  He denies ever being
             intubated or being put on a ventilator.  He says that mild exertion such as
10            walking distances of less than one-half block makes him short of breath.
             Also doing small things such as putting shoes on can make him short of
11            breath.  He denied any exertional chest pain.  There is no documentation of
             myocardial infarction in the past.

12

13   Dr. Sharma stated that there is no history of hypertension.  On physical examination, the doctor

14   noted that plaintiff's lungs showed scattered rales and decreased air entry bilaterally.  He added

15   that the expiratory phase is prolonged.  He also observed scoliosis in the thoracic and lumbar

16   spine with no tenderness to palpation and no spasm.  Plaintiff's back range of motion was full

17   and straight-leg raising was negative bilaterally.  Lasegue sign was negative.  Dr. Sharma

18   provided the following functional assessment:

19            Because of his history of chronic obstructive pulmonary disease with
             shortness of breach on mild exertion, the claimant is limited to light work.
20            The claimant should be limited in lifting to 10 pounds frequently, 20
             pounds occasionally.  Standing and walking should be limited to 6 hours
21            per day with normal breaks.  There are no limitations in holding, fingering,
             or feeling objects.  There are no limitations in speech, hearing, or vision.

22

23            October 5, 2005 – Agency consultative doctor Shepard Fountaine, M.D.,

24   submitted a physical residual functional capacity assessment.  (CAR 84-91).  The doctor's

25   functional assessment was the same as that provided by Dr. Sharma.  Dr. Fountaine added that

26   plaintiff was unlimited in ability to push/pull and should avoid fumes, odors, dusts, gases, and

1   poor ventilation.  Dr. Fountaine noted that plaintiff's subjective complaints were only partially

2   credible because "symptoms appear disproportionate to substantial evidence."

3               March 16, 2006 – Agency consultative doctor Marshall Gollub, M.D., submitted a

4   physical residual functional capacity assessment.  (CAR151-58).  Dr. Gollub opined that plaintiff

5   could lift/carry 10 pounds both occasionally and frequently, could stand/walk for at least 2 hours

6   but not as many as six hours in a workday, could sit for up to six hours, and push/pull without

7   restriction.  He also opined that plaintiff could only occasionally climb, balance, stoop, kneel,

8   crouch, or crawl.  No manipulative, visual, or communicative limitations were noted.  The doctor

9   stated that plaintiff should avoid fumes, odors, dusts, gases, and poor ventilation and added that

10  plaintiff needs a "rather clean environment."

11              July 1, 2006 – Sangita Barish, D.O., reported following plaintiff's admission to

12  the emergency room at San Joaquin General Hospital.  (CAR 195-97).  Plaintiff was brought in

13  for shortness of breath and non-productive cough, and reported that he had run out of his

14  medication a few days earlier.  Chest x-rays showed pulmonary fibrosis, an endotracheal tube in

15  place at the right main stem bronchus, and decreased lung volume.  Plaintiff's urine toxicology

16  was positive for cocain and cannabis, and the doctor noted alcohol abuse.  Plaintiff was provided

17  medication and discharged.

18              October 30, 2006 – Melvin L. McCory, Sr., submitted a third-party statement as to

19  plaintiff's capabilities.  (CAR 64).  He stated:

20          My name is Melvin L. McCory, Sr.  I have known James Steeves
        for more than 15 years.  I am the Pastor and C.E.O. of the Church of Christ
21      Within, d.b.a. Christ's Missionaries.  James has been with the church for
        15 years.  I have watched his health deteriorate for the past 6 years or
22      more.  James did store-front soliciting and door-to-door fundraising for the
        last year so James has not been able to fundraise for our church because he
23      cannot walk very far, he cannot do door-to-door fundraising nor is he able
        to sit at a store holding a bucket all day to earn his keep.  I see him
24      everyday fighting to breath as he heads for the bath room.  James Steeves
        is more than welcome to stay with the Christ's Missionaries.  He does not
25      have an income and he cannot support himself.

26  / / /

5

On this same day, Paul Ridgeway, the executive director of the church, submitted a third-party statement. (CAR 65.) He stated as follows:

> I have known James Steeves for more than 6 years and have known him to be in poor health. His breathing is shallow and he is unable to walk virtually short distances without his oxygen bottles. His efforts to breathe are hard and taxing. James is unable to help fundraise funds to keep the church's homeless shelter doors open. Now that he is without income and is in need of help to support himself.

### III.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

1

2    **IV.  DISCUSSION**

3          Plaintiff argues: (1) the ALJ erred in concluding that his COPD did not meet the

Listing of Impairments; (2) the ALJ erred by discrediting his testimony based on inability to

afford prescribed medication; (3) the ALJ failed to consider lay witness testimony; and (4) the

ALJ erred in relying on the Grids in lieu of obtaining testimony from a vocational expert.  The

court notes that plaintiff does not challenge the ALJ's severity finding or analysis of the medical

opinions.  Nor does plaintiff challenge the ALJ's credibility finding except as it relates to

plaintiff's ability to afford medication.

    A.    **Application of the Listing of Impairments**

          The Social Security Regulations "Listing of Impairments" is comprised of

impairments to fifteen categories of body systems that are severe enough to preclude a person

from performing gainful activity.  <u>Young v. Sullivan</u>, 911 F.2d 180, 183-84 (9th Cir. 1990); 20

C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are

irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all

the requirements of that listing must be met.  <u>Key v. Heckler</u>, 754 F.2d 1545, 1550 (9th Cir.

1985).

          As to application of the Listing of Impairments, the ALJ stated:

> The next step in the sequential evaluation process, Step 3, asks whether
> the claimant suffers from any impairment that is either listed in, or
> medically equivalent to one listed in, the Listing of Impairments found at
> 20 C.F.R., Part 404, Subpart P, Appendix 1.  The claimant's medical
> records do not describe the findings of nerve root compression with neuro-
> anatomic distribution of pain, limitation of motion of the spine, motor loss
> (atrophy with associated muscle weakness or muscle weakness), sensory
> or reflex loss, and positive straight-leg raising testing required under
> Section 1.04 for a Listing level disorder of the spine.
>
> Moreover, the results of pulmonary function testing performed do not
> reveal the . . . findings necessary to satisfy the criteria of Section 3.02 for
> Listing level chronic pulmonary insufficiency.  Finally, the medical
> findings contained in the record are not equal in severity and duration to
> any Listed findings.  (citations omitted).

/ / /

1  Plaintiff contends that the ALJ erred in concluding that his COPD was not an impairment

2  meeting the requirements of Listing 3.02.[1]  Specifically, plaintiff contends that, to the extent the

3  ALJ's conclusion is based on plaintiff's failure to stop smoking, the ALJ did not discuss this

4  reason in the hearing decision and, in any event, no doctor formally prescribed smoking

5  cessation.   Plaintiff adds that he did quit smoking in July 2006 but nonetheless continues to

6  suffer from COPD symptoms.

7           Plaintiff's argument is unpersuasive.  Notwithstanding the ALJ's failure to discuss

8  smoking cessation, the ALJ did discuss other reasons plaintiff's COPD does not satisfy Listing

9  3.02.  Specifically, the ALJ noted that plaintiff's pulmonary functioning data did not meet the

10  requirements – a fact plaintiff ignores.

11          **B.      Plaintiff's Credibility**

12          The Commissioner determines whether a disability applicant is credible, and the

13  court defers to the Commissioner's discretion if the Commissioner used the proper process and

14  provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

15  credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

16  F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

17  821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

18  and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

19  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

20  credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

21  1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

22  and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

23  / / /

24  / / /

25

26          [1]      Plaintiff does not challenge the ALJ's finding with respect to Listing 1.04 related
    to disorders of the spine.

8

1    　　　　If there is objective medical evidence of an underlying impairment, the

2    Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

3    because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

4    341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

5    　　　　　　The claimant need not produce objective medical evidence of the
     　　　　[symptom] itself, or the severity thereof.  Nor must the claimant produce
6    　　　　objective medical evidence of the causal relationship between the
     　　　　medically determinable impairment and the symptom.  By requiring that
7    　　　　the medical impairment "could reasonably be expected to produce" pain or
     　　　　another symptom, the Cotton test requires only that the causal relationship
8    　　　　be a reasonable inference, not a medically proven phenomenon.

9    　　　　80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
     　　　　Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
10

11   　　　　The Commissioner may, however, consider the nature of the symptoms alleged,

12   including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

13   947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

14   claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

15   testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

16   prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and

17   (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See

18   Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

19   claimant cooperated during physical examinations or provided conflicting statements concerning

20   drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

21   claimant testifies as to symptoms greater than would normally be produced by a given

22   impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

23   Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

24   / / /

25   / / /

26   / / /

1    As to plaintiff's credibility, the ALJ stated:

2    The claimant has . . . alleged an inability to perform even sedentary work
     due to his shortness of breath and other symptoms.  His allegations must
3    be considered in light of the objective medical findings as well as in light
     of other evidence such as the claimant's daily activities, the location,
4    duration, frequency, and intensity of the claimant's symptoms,
     precipitating and aggravating factors, use of medications, treatment other
5    than medications, other measures used to relieve his symptoms, and other
     factors concerning this functional limitations and restrictions due to his
6    symptoms. (citations omitted).  In this case, I find specific and legitimate
     reasons to reject the claimant's statements regarding his symptoms.

7
     First, I note that although the claimant has been hospitalized and has had
8    to seek emergency room treatment on many occasions for shortness of
     breath and other respiratory problems, he has more than a 60-pack [per]
9    year history of smoking cigarettes and smoked against medical advice,
     repeatedly stating that he did not want to quit, until his July 2006
10   admission (Exhibits 5F, esp. 5F/19 & 5F/44 & 9F).  In addition, he also
     has a history of smoking marijuana and cocaine until July 2006 (Exhibits
11   5F/19, 9F/21 & 9F/26).  Finally, although the claimant testified that he is
     so incapacitated that he cannot go anywhere without his oxygen mask,
12   when he was admitted to the hospital in August 2004 he reported that he
     had run our of his home oxygen and all of the other drugs that he was on
13   for his breathing problems (Exhibit 9F/26), when he was discharged from
     the hospital in June 2005 he was told that he did not qualify for home
14   oxygen therapy (Exhibit 9f/25) and when he was admitted to the hospital
     in July 2006 he reported that he had run out of his medications a few days
15   earlier (Exhibit 9F/21).

16   Plaintiff argues that the ALJ improperly focused on plaintiff's inability to afford medications.

17   Plaintiff's argument, in its entirety, is as follows:

18       The inability to afford prescribed treatment is among the
     circumstances that  justify the failure to obtain it.  *Gamble v. Chater*, 68
19   F.3d 319, 322 (9th Cir. 1995).  Here, the ALJ apparently discredited
     Plaintiff for not refilling his prescriptions, including Plaintiff's
20   prescription for home oxygen therapy. CT 17.  Since Plaintiff established
     that he was impoverished and therefore unable to afford these
21   prescriptions, the ALJ used this basis improperly.  CT 64-65.

22   Plaintiff does not challenge any of the other reasons the ALJ provided for determining that

23   plaintiff's testimony was not credible.

24   / / /

25   / / /

26   / / /

10

1          As the ALJ noted, plaintiff's credibility regarding debilitating shortness of breath

2 is belied by his daily activity through July 2006 of smoking cigarettes, marijuana, and cocaine.

3 This, in and of itself, constitutes a sufficient reason to reject plaintiff's testimony.  To the extent

4 plaintiff contends that he was still disabled due to COPD symptoms even after he quit smoking

5 and using drugs in July 2006, plaintiff has presented no objective medical evidence to this effect.

6 Therefore, his claim of debilitating symptoms after July 2006 are unsupported by the record.

7          Turning to the ALJ's comments regarding plaintiff's medications, plaintiff

8 misreads the ALJ's decision.  According to plaintiff, the ALJ was commenting on a failure to

9 follow a prescribed course of treatment as inconsistent with plaintiff's testimony of debilitating

10 COPD symptoms.  This is not how the court reads the decision.  In particular, the ALJ first noted

11 that plaintiff testified that he could not go anywhere without his oxygen mask and then contrasted

12 this testimony with plaintiff's ability to function for several days on various occasions between

13 running out of oxygen and eventually seeking treatment.  Thus, the ALJ was not commenting on

14 plaintiff's failure to take medication, but was commenting on the inconsistency between

15 plaintiff's statement that he could not go anywhere without his oxygen and his actual ability to

16 function without oxygen.

17          For these reasons, the court finds no error in the ALJ's credibility analysis.

18         **C.**      **Lay Witness Testimony**

19          In determining whether a claimant is disabled, an ALJ generally must consider lay

20 witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915,

21 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

22 testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

23 evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100

24 F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony

25 of lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at

26 919.

1          The ALJ, however, need not discuss all evidence presented.  See Vincent on

2   Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, he must explain

3   why "significant probative evidence has been rejected." Id. (citing Cotter v. Harris, 642 F.2d 700,

4   706 (3d Cir.1981).  Applying this standard, the court held that the ALJ properly ignored evidence

5   which was neither significant nor probative.  See id. at 1395.  As to a letter from a treating

6   psychiatrist, the court reasoned that, because the ALJ must explain why he rejected

7   uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was

8   controverted by other medical evidence considered in the decision.  See id.  As to lay witness

9   testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court

10  concluded that the evidence was properly ignored because it "conflicted with the available

11  medical evidence" assessing the plaintiff's mental capacity.  Id.

12          In Stout v. Commissioner, the Ninth Circuit recently considered an ALJ's silent

13  disregard of lay witness testimony.  See 454 F.3d 1050, 1053-54 (9th Cir. 2006).  The lay witness

14  had testified about the plaintiff's "inability to deal with the demands of work" due to alleged

15  back pain and mental impairments.  Id.   The witnesses, who were former co-workers testified

16  about the plaintiff's frustration with simple tasks and uncommon need for supervision.  See id.

17  Noting that the lay witness testimony in question was "consistent with medical evidence," the

18  court in Stout concluded that the "ALJ was required to consider and comment upon the

19  uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to

20  work." Id. at 1053.   The Commissioner conceded that the ALJ's silent disregard of the lay

21  testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth

22  Circuit rejected the Commissioner's request that the error be disregarded as harmless.  See id. at

23  1054-55.  The court concluded:

24          Because the ALJ failed to provide any reasons for rejecting competent lay
            testimony, and because we conclude that error was not harmless,
25          substantial evidence does not support the Commissioner's decision . . .

26          Id. at 1056-67.

1    From this case law, the court concludes that the rule for lay witness testimony

2 depends on whether the testimony in question is controverted or consistent with the medical

3 evidence.  If it is controverted, then the ALJ does not err by ignoring it.  See Vincent, 739 F.2d at

4 1395.  If lay witness testimony is consistent with the medical evidence, then the ALJ must

5 consider and comment upon it.  See Stout, 454 F.3d at 1053.  However, the Commissioner's

6 regulations require the ALJ consider lay witness testimony in certain types of cases.  See Smolen

7 v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); SSR 88-13.  That ruling requires the ALJ to

8 consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that

9 are not shown by the medical evidence.  See id.  Thus, in cases where the plaintiff alleges

10 impairments, such as chronic fatigue or pain (which by their very nature do not always produce

11 clinical medical evidence), it is impossible for the court to conclude that lay witness evidence

12 concerning the plaintiff's abilities is necessarily controverted such that it may be properly

13 ignored.  Therefore, in these types of cases, the ALJ is required by the regulations and case law to

14 consider lay witness evidence.

15    Plaintiff argues:

16    Here, Pastor Melvin L. McCoy and Executive Director Paul
Ridgeway from Plaintiff's church submitted letters attesting to Plaintiff's
17    shortness of breath, need for an oxygen tank, and difficulty moving about.
Pastor McCoy even testified that Plaintiff has difficulty simply sitting and
18    holding the fund-raising bucket.  This is proper, non-medical, lay evidence
and should have been evaluated in the ALJ's decision.  Thus, the ALJ
19    violated the requirement of *Dodrill* and Plaintiff should be entitled to a
new hearing. CT 64-65.
20

21 The court finds that plaintiff's argument is conclusory and unpersuasive.  In particular, plaintiff

22 does not explain why the ALJ was required to consider the lay testimony at issue and the court

23 concludes that there was no such requirement in this case.  As indicated above, the ALJ need not

24 discuss all the evidence presented.  Where lay evidence is controverted by the medical evidence,

25 it is considered neither significant nor probative.  Here, for example, Mr. McCoy and Mr.

26 Ridgeway stated in October 2006 that plaintiff could not walk even short distances.  However, in

13

1   March 2006, Dr. Gollub opined that plaintiff could stand and/or walk for at least two hours.  In

2   September 2005, Dr. Sharma concluded that plaintiff could walk for up to six hours a day, and

3   Dr. Fountaine reached the same conclusion in October 2005.

4           Even if the ALJ erred by not commenting on the lay witness statements, any error

5   was harmless.  The Ninth Circuit has applied harmless error analysis in social security cases in a

6   number of contexts.  For example, in Stout, 454 F.3d at 1056, the court stated that the ALJ's

7   failure to consider uncontradicted lay witness testimony could only be considered harmless ". . .

8   if no reasonable ALJ, when fully crediting the testimony, could have reached a different

9   disability determination."  See also Robbins v. Social Security Administration, 466 F.3d 880, 885

10  (9th Cir. 2006) (citing Stout, 454 F.3d at 1056).  Similarly, in Batson v. Commissioner of Social

11  Security, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's

12  failure to properly credit the claimant's testimony.  Specifically, the court held:

13              However, in light of all the other reasons given by the ALJ for
            Batson's lack of credibility and his residual functional capacity, and in
14          light of the objective medical evidence on which the ALJ relied there was
            substantial evidence supporting the ALJ's decision.  Any error the ALJ
15          may have committed in assuming that Batson was sitting while watching
            television, to the extent that this bore on an assessment of ability to work,
16          was in our view harmless and does not negate the validity of the ALJ's
            ultimate conclusion that Batson's testimony was not credible.

17          Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

18

19  In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the

20  claimant's age and education.

21          The harmless error standard was recently applied in Carmickle v. Commissioner,

22  533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility.  Citing Batson,

23  the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse

24  credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons

25  / / /

26  / / /

14

1    was harmless error."  See id. at 1162.  The court articulated the difference between harmless

2    error standards set forth in Stout and Batson as follows:

3                  . . . [T]he relevant inquiry [under the Batson standard] is not
             whether the ALJ would have made a different decision absent any error. . .
4            it is whether the ALJ's decision remains legally valid, despite such error.
             In Batson, we concluded that the ALJ erred in relying on one of several
5            reasons in support of an adverse credibility determination, but that such
             error did not affect the ALJ's decision, and therefore was harmless,
6            because the ALJ's remaining reasons *and ultimate credibility*
             *determination* were adequately supported by substantial evidence in the
7            record.  We never considered what the ALJ would do if directed to
             reassess credibility on remand – we focused on whether the error impacted
8            the *validity* of the ALJ's decision.  Likewise, in Stout, after surveying our
             precedent applying harmless error on social security cases, we concluded
9            that "in each case, the ALJ's error . . . was inconsequential to the *ultimate*
             *nondisability determination.*"

10

11                 Our specific holding in Stout does require the court to consider
             whether the ALJ would have made a different decision, but significantly,
12           in that case the ALJ failed to provide *any reasons* for rejecting the
             evidence at issue.  There was simply nothing in the record for the court to
13           review to determine whether the ALJ's decision was adequately supported.

14    Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

15    Thus, where the ALJ's errs in not providing any reasons supporting a particular determination,

16    the error is only harmless if the ultimate disability conclusion is invalid because a reasonable

17    ALJ would have reached a different conclusion had the error not occurred.  Otherwise, an ALJ's

18    error is harmless if it is inconsequential to the ultimate conclusion regarding disability.

19                 In this case, any possible error would stem from the ALJ's silent disregard of the

20    third-party statements from Mr. McCoy and Mr. Ridgeway.  Because there is no analysis to

21    review, the Stout standard applies and the error is harmless if a reasonable ALJ would have

22    reached a different conclusion had the error not occurred.  Applying this standard, the court finds

23    that no reasonable ALJ would have reached a different disability conclusion even had the lay

24    witness statements been considered.  As discussed above, the lay witness statements were

25    contradicted by all the medical opinions as to plaintiff's functional capacity.

26    / / /

15

1    For all these reasons, the court does not agree that a remand is necessary to allow

2  the agency to consider the lay witness statements.

3    **D.    Application of the Grids**

4    The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about

5  disability for various combinations of age, education, previous work experience, and residual

6  functional capacity.  The Grids allow the Commissioner to streamline the administrative process

7  and encourage uniform treatment of claims based on the number of jobs in the national economy

8  for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458,

9  460-62 (1983) (discussing creation and purpose of the Grids).

10    The Commissioner may apply the Grids in lieu of taking the testimony of a

11  vocational expert only when the Grids accurately and completely describe the claimant's abilities

12  and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v.

13  Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the

14  Grids if a claimant suffers from non-exertional limitations because the Grids are based on

15  exertional strength factors only.[2]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).

16  "If a claimant has an impairment that limits his or her ability to work without directly affecting

17  

18    [2]    Exertional capabilities are the primary strength activities of sitting, standing,
walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to

19  perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart
P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time

20  and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20
C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at

21  a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§
404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time

22  with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§
404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time

23  with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§
404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than

24  100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.
See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

25    Non-exertional activities include mental, sensory, postural, manipulative, and
environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R.,

26  Part 404, Subpart P, Appendix 2, § 200.00(e).

his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Upon determining that plaintiff is capable of sedentary work and that he cannot perform his more strenuous past relevant work, the ALJ applied the Grids as follows:

> The burden shifts to the Commissioner at Step 5 of the sequential evaluation process to show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with his medically determinable impairments, functional limitations, age, education, and work experience.  (citations omitted).  The claimant is 40 years old and has been a "younger individual" at all relevant times.  (citation omitted).  He has a high school education.  (citation omitted).  With such a profile and past unskilled work, and with a residual functional capacity for sedentary work, Rule 201.27 of the Medical-Vocational Guidelines . . . directs a findings of "not disabled" here, and I so find.

Plaintiff argues that vocational expert testimony was required because his required oxygen tank use constituted a non-exertional limitation precluding application of the Grids.  This argument is unpersuasive because there is no objective medical evidence establishing that plaintiff required the use of an oxygen tank.

/ / /

## V.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

        1.      Plaintiff's motion for summary judgment (Doc. 13) is denied;

        2.      Defendant's cross-motion for summary judgment (Doc. 14) is granted; and

        3.      The Clerk of the Court is directed to enter judgment and close this file.

DATED:  September 25, 2009

                                 _____
                                 **CRAIG M. KELLISON**
                                 UNITED STATES MAGISTRATE JUDGE